UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MARK BRUNO,

                Plaintiff,

        -against-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
13-CV-7298 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

       Plaintiff Mark Bruno (the "Plaintiff") appeals the decision of the Commissioner of Social Security ("the Commissioner"), finding he was not disabled under the Social Security Act ("the Act") and, therefore, not entitled to disability insurance benefits. Defendant moved for judgment on the pleadings asking the Court to affirm the Commissioner's decision. (*See generally* Def.'s Mot. for J. on the Pleadings ("Def.'s Mot."), Dkt. Entry No. 14.) Plaintiff cross-moved for judgment on the pleadings requesting remand of Plaintiff's claim for further administrative proceedings pursuant to 42 U.S.C. § 405(g) in order for the Commissioner to consider additional medical records, correctly apply the relevant legal standards, and reassess his subjective complaints and credibility. (*See generally* Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot.", Dkt. Entry No. 15.) For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted. Accordingly, this matter is remanded to the Commissioner for further proceedings consistent with this Order.

# BACKGROUND

## I. Procedural History

Plaintiff applied for disability insurance benefits on March 13, 2011, alleging he became disabled on February 8, 2009. (Certified Administrative Record ("Tr.") 120-21, Dkt. Entry No. 16.) Specifically, Plaintiff requested disability benefits from February 8, 2009 to his last insured date of March 31, 2011. The claim was denied and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 60-70, 72-74.) A hearing was held before ALJ Jay Cohen on April 19, 2012, at which Plaintiff appeared with counsel. (Tr. 24-54.) By decision dated October 3, 2012, the ALJ found that Plaintiff was not disabled. (Tr. 10-19.) Plaintiff requested review of the ALJ's decision, but on October 28, 2013, the Appeals Council denied Plaintiff's request. (Tr. 1-3.) Plaintiff then commenced the present action on December 23, 2013. (*See generally* Compl.; Dkt. Entry No. 1.)

## II. Non-Medical and Testimonial Evidence

Plaintiff, aged 54, lives with his parents. (Tr. 28.) He graduated high school, and completed one year of college. (Tr. 28.) Plaintiff worked for the New York City Department of Transportation from June 1986 to March 2005 and as a service representative for a fencing company from June 1986 to February 2009. (Tr. 29-33, 137, 141-43.) Plaintiff formally resigned from the Department of Transportation in 2005 because he had difficulty getting around, but last worked there in 2002 when he injured himself on the job. (Tr. 30-31.) As part of his work for the Department of Transportation, Plaintiff helped clean up the World Trade Center after the events of September 11, 2001. (Tr. 32.)

At the hearing before the ALJ, Plaintiff stated that he could not work due to difficulty walking because of knee and leg pain. (Tr. 34.) Plaintiff stated that his knee would give out,

causing him to fall and, if he walked a lengthy distance, his feet burned and his legs ached. (Tr. 34.) Plaintiff could walk four to five blocks, but had trouble standing for long periods of time. (Tr. 34.) Plaintiff estimated that he could stand for 30 minutes at a time. (Tr. 35.) He also had trouble sitting and, on a good day, he could sit for one hour. (Tr. 35.) He had trouble carrying items, lifting with his legs, and bending down to pick up items. (Tr. 36.) Plaintiff also wears a knee brace. (Tr. 34)

At the hearing, Plaintiff also testified that did not cook because his mother did the cooking. (Tr. 40-41.) Plaintiff made his bed, but did no other cleaning. (Tr. 41.) Plaintiff did some driving but preferred being a passenger due to his right knee problem. (Tr. 41.) Plaintiff stated that he did not think he could work at a desk job because he needed to get up and adjust his position often. (Tr. 47.) He was bedridden for days when a nerve in his knee was aggravated. (Tr. 47.) Plaintiff's left shoulder also "locked up" and he occasionally had shooting pains that caused him to drop items. (Tr. 47-48.) Plaintiff could bathe himself and shave. (Tr. 48.)

In his disability report, Plaintiff stated that he stopped working at the fencing company on February 8, 2009 due to his injuries, breathing, and mental health issues. (Tr. 136, 148.) Plaintiff also reported that, as a result of his experience working at the World Trade Center, he had an anger problem and was paranoid "all the time." (Tr. 154.) Plaintiff also had trouble remembering things due to difficulty focusing. (Tr. 157.)

Plaintiff completed a pain questionnaire on May 9, 2011. (Tr. 177-79.) He stated that pain began to affect his activities in February 2009, but he was not receiving medical treatment at that time and never had special testing to evaluate his pain. (Tr. 177.) Plaintiff described sharp, stabbing pain in his feet and legs that prevented him from walking. (Tr. 177.) If he did

not stop walking, it radiated to his buttocks and back. (Tr. 177.) He asserted that his pain had gotten worse since 2009 and now occurs daily. (Tr. 177.) This pain is brought on by sitting in a fixed position for a long period of time, such as a long drive or by walking or standing for extended periods. (Tr. 177.)

### III. Medical Evidence

Plaintiff reported that, on July 15, 2002, while at work, he stepped off a truck and slipped on pavement, causing his knee to buckle out from under him. (Tr. 239.) Plaintiff reported hearing his knee snap and went to the emergency room at St. Joseph's Hospital. (Tr. 239.) Plaintiff's right knee was placed in a splint and he was advised to take 400mg of Motrin. (Tr. 239.) Plaintiff reported that he essentially had been asymptomatic prior to his injury. (Tr. 239.) Neurological perception tests of Plaintiff's heels revealed "very mild sensory dysfunction" in both legs. (Tr. 243.) Testing of Plaintiff's toes revealed very mild hyperesthetic conditions in both feet. (Tr. 245.) Plaintiff saw Dr. Jack Schweitzer on July 19, 2002 in connection with his workers' compensation claim. (Tr. 210, 239) Dr. Schweitzer diagnosed Plaintiff as having a cruciate ligament sprain to the knee, internal derangement of the knee, not otherwise specified, cramp in a limb, and skin sensation disturbance. (Tr. 210.) On another form, Dr. Schweitzer also diagnosed Plaintiff as having paresthesia. (Tr. 242.) The doctor concluded Plaintiff was disabled from his regular work duties. (Tr. 210.)

On August 13, 2002, Dr. Schweitzer diagnosed post-traumatic sprain/strain of the right knee and suspicion of internal derangement of the right knee. (Tr. 249.) Dr. Schweitzer advised Plaintiff to attend physical therapy two to three times per week, and referred Plaintiff for an MRI of his right knee. (Tr. 249.) Dr. Schweitzer saw Plaintiff on August 20, 2002, at which time he administered nerve block injections and manipulated Plaintiff's right knee. (Tr. 252.) Plaintiff

saw Dr. Schweitzer again on December 6, 2002, and January 14, 2003. (Tr. 208.) His diagnosis was lower leg injury not otherwise specified and articular cartilage disorder of the lower limb. (Tr. 208.) The doctor concluded Plaintiff remained disabled from his regular duties. (Tr. 208.)

On January 17, 2003, an MRI of Plaintiff's right knee revealed joint effusion and a tear of the posterior horn and medial meniscus. (Tr. 259.) Plaintiff was treated by Dr. Schweitzer several times each month through September 2003 and his diagnosis remained unchanged (Tr. 213, 261-66, 271-72, 281, 461, 483.) On September 30, 2003, Plaintiff underwent right knee arthroscopic surgery for a torn right medial meniscus. (Tr. 349-50.)

In May 2010, Plaintiff was examined by Dr. Sunil Butani who indicated Plaintiff had sustained 15-20% loss of use of his right knee, and was unable to do any kneeling, lifting, or standing for long periods, or do his "usual work." (Tr. 382.)

On March 9, 2011, Dr. Jeffrey Weissman examined Plaintiff and his diagnoses were pain in joint (unspecified site), and pain in joint (lower leg). (Tr. 289-90.) Dr. Weissman's assessment was synovitis and ligament sprain, and he ruled out internal derangement of the knee. (Tr. 290.) On physical examination, Plaintiff had a hematoma/lump/swelling of his right knee, joint effusion, pain and tenderness of the knee, and painful range of motion of the knee. (Tr. 291.) There was spasm in the knee, strength was diminished, and there was muscle atrophy at the knee. (Tr. 291.) Dr. Weissman recommended physical therapy, trigger point injections, strapping the knee, and soft casting the knee. (Tr. 291.) Dr. Weissman stated that Plaintiff could not return to work due to "total disability." (Tr. 292.) Plaintiff saw Dr. Weissman several times throughout March and his diagnosis was unchanged. (Tr. 293-96, 298-99, 304-06, 307-08, 316-17.)

On March 21, 2011, Plaintiff was examined by Dr. Edward Toriello for an independent

medical examination in connection with Plaintiff's Worker's Compensation claim. (Tr. 172.) Dr. Toriello noted that Plaintiff ambulated independently and normally. (Tr. 175.) He had normal heel and toe gait. (Tr. 175.) Plaintiff had full and pain free range of motion of his right knee. Dr. Toriello's impression was a resolved right knee injury, status post arthroscopic surgery for a medial meniscal tear. (Tr. 175.) Dr. Toriello opined that Plaintiff had a 7.5% schedule loss of use of his right leg. (Tr. 175.)

On March 22, 2011, Plaintiff sought treatment from Dr. Victor Labruna for symptoms of Post-Traumatic Stress Disorder ("PTSD") due to his experience on and after September 11, 2001 cleaning the World Trade Center cite. (Tr. 351, 356.) He also saw many car accidents as a worker for the Department of Transportation. (Tr. 356.) Dr. Labruna noted that Plaintiff's appearance and behavior were appropriate, his mood was moderately depressed, and he was moderately anxious. (Tr. 357.) Plaintiff had no somatic or cognitive symptoms. (Tr. 357.) Dr. Labruna diagnosed PTSD. (Tr. 357.)

On March 5, 2012, Plaintiff presented to the Aurora Advanced Healthcare in Hartford, Wisconsin for treatment of his knee pain. (Tr. 331.) Plaintiff saw Dr. Joel Wallskog on March 11, 2012. (Tr. 329.) Dr. Wallskog diagnosed right knee pain due to some chronic patellofemoral symptoms and probably some degeneration of his patellofemoral joint. (Tr. 330.) Dr. Wallskog was concerned that the majority of Plaintiff's daily acute pain was due to a neuroma of the inferior branch of the saphenous nerve. (Tr. 330.) Dr. Wallskog injected this area with lidocaine. (Tr. 330.) Plaintiff saw Dr. Wallskog again on April 9, 2012 and noted excellent, but transient, pain relief from the injection. (Tr. 334.) Plaintiff also reported chronic left shoulder pain since an injury in the 1990's, and chronic, episodic foot burning. (Tr. 334) Plaintiff's right knee revealed persistent tenderness and sensitivity around the anteromedial arthroscopic portal.

(Tr. 334.) Plaintiff had a mildly positive patellofemoral grind. (Tr. 334.) Dr. Wallskog diagnosed left shoulder pain, bilateral lower extremity burning, and right knee pain, status post arthroscopy. (Tr. 335.)

On June 10, 2012, the ALJ proffered interrogatories to a medical expert, Dr. Donald Goldman, an orthopedic surgeon. (Tr. 169-70, 503-10.) Dr. Goldman opined that Plaintiff did not have a severe impairment. (Tr. 503.) Instead, he found that Plaintiff had experienced a short-term disability following his knee surgery, based on the post-operative care records. Dr. Goldman also stated that Plaintiff could continuously lift up to 50 pounds and carry up to 20 pounds, and frequently carry up to 50 pounds. (Tr. 505.) Plaintiff could sit for eight hours per eight-hour work day, and could sit and stand for four hours at each activity. (Tr. 506.) Plaintiff could sit, stand, and walk for a total of six hours each per day. (Tr. 506.) Plaintiff did not need a cane to ambulate. (Tr. 506.) Plaintiff occasionally could climb stairs, ramps, ladders, and scaffolds, and frequently could balance, stoop, kneel, crouch, and crawl. (Tr. 508.) Plaintiff had no limitations in exposure to unprotected heights, moving mechanical parts, or operating a motor vehicle. (Tr. 509.) Plaintiff was capable of performing activities like shopping, traveling without assistance, ambulating without assistance, walking a block at a reasonable pace on uneven surfaces, using public transportation, climbing steps at a reasonable pace, preparing simple meals, caring for his personal hygiene, and sorting, handling, and using paper files. (Tr. 510.) Dr. Goldman opined that Plaintiff could work with mild restrictions. (Tr. 510.)

## III. Vocational Expert's Testimony

The ALJ took testimony from a vocational expert, Amy Vercillo. (Tr. 50.) The vocational expert testified that Plaintiff's past relevant work was as a paving and construction supervisor, which is light work with an specific vocational preparation ("SVP") of 7, and a fence

installer supervisor, which is also light, skilled work with an SVP of 7. (Tr. 51.) The skills learned on these jobs were not generally transferable, but could be transferred to jobs within the specific occupational group of the construction industry. (Tr. 51.) The skills were not transferable to sedentary work even in the construction industry. (Tr. 51.)

## DISCUSSION

### I. Standard of Review

A district court reviewing the final determination of the Commissioner must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). This requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotations omitted).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

## II. Disability Claims

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further requires that an individual will be "determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Act as set forth in 20 C.F.R. § 404.1520. If at any step, the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or

equals an impairment listed in the regulations. *See* 20 C.F.R. § 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's "residual functional capacity" ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e); *see also Caplan v. Astrue*, 2009 WL 691922, at *6 (E.D.N.Y. Mar. 15, 2009). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." 20 C.F.R. § 404.1520(e). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts from the plaintiff to the Commissioner to demonstrate that the plaintiff could perform other work in the national economy. *Caplan*, 2009 WL 691922, at *6; *see also Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

### III. The ALJ's Decision

The ALJ applied the five-step procedure in making his determination that Plaintiff was not disabled. (Tr. 13-19.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the closed period of February 8, 2009 to March 31, 2011. (Tr. 12.) At step two, the ALJ determined that Plaintiff did not have a severe impairment or combination of impairments. (Tr. 16.) The ALJ based his decision on his finding that the only objective medical evidence that dates from the time the claimant was insured for disability comes from Dr. Toriello, who concluded that Plaintiff's knee injury was resolved with only a very minor loss of use of the right leg. (Tr. 17.) With regard to Plaintiff's other complaints of left shoulder pain and burning in the lower extremities, the ALJ found that Plaintiff first complained of these in April 2012, well beyond the expiration of his disability insurance status. (Tr. 17) As

for Plaintiff's diagnosis of PTSD, the ALJ found it uncorroborated as Plaintiff did not obtain follow-up care and was found to be "mildly depressed and anxious, with no cognitive difficulties or somatic symptoms." (Tr. 18.) The ALJ further did not consider the testimony of the vocational expert, who testified that Plaintiff's skill set was not transferrable. This is most likely due to the fact that the ALJ only reached step two of the disability analysis.

IV. Application

Defendant moved for judgment on the pleadings contending that the ALJ applied the correct legal standards in finding that Plaintiff was not disabled. (*See generally* Def.'s Mot.) Plaintiff cross-moved for judgment on the pleadings, contending that the ALJ: (1) applied an incorrect legal standard in evaluating the severity of Plaintiff's impairments; (2) failed to properly weigh the medical opinions of record; (3) neither considered the entire medical record nor developed the record properly; (4) committed reversible error in not finding Plaintiff's PTSD diagnosis a medically determinable impairment; and (5) failed to evaluate Plaintiff's credibility properly. (*See generally* Pl.'s Mot.)

A. **The ALJ Applied the Incorrect Legal Standard in Evaluating Plaintiff's Disability Claim**

The ALJ determined at step two that Plaintiff did not have a severe impairment or combination of impairments and, therefore, was not disabled. Plaintiff argues that, in making this determination, the ALJ applied the incorrect legal standard when he found that the evidence must show Plaintiff "lacks the ability" to engage in, among other things, concentrating, following work instructions, dealing with changes in a routine setting, and responding appropriately in work situations.

"[T]he severity prong is intended as a *de minimis* standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work

11

activity.'" *Vicari v. Astrue,* 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 158 (1987) (O'Connor, J., concurring, joined by Stevens, J.)); *see also Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995) ( "[T]he severity regulation is valid only if applied to screen out *de minimis* claims."). Courts in the Second Circuit have found that "[a] finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Juarbe v. Astrue,* 2011 WL 4542964, at *6 (D. Conn. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4542962 (D. Conn. Sept. 28, 2011) (internal quotation marks omitted). "[T]he existence of a severe impairment serves only as a threshold to be met for the purpose of screening out *de minimis* claims." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 233 (E.D.N.Y. 2014) (internal quotation marks omitted). "If [ ] the disability claim rises above the *de minimis* level, then the analysis must proceed to step three." *Mattei v. Barnhart*, 2003 WL 23326027, at *6 (E.D.N.Y. Dec. 31, 2003).

Based on the evidence, Plaintiff met the requirements for a severe impairment under step two and the ALJ applied an incorrect legal standard. In May 2010, Dr. Butani found that Plaintiff's 15-20% loss of use of his right knee affected his ability to perform his "usual work." In March 2011, Dr. Weissman found Plaintiff's injuries to be spasm, pain, and tenderness in the knee, painful range of motion in the knee, diminished knee strength, and muscle atrophy, a combination that prevented Plaintiff from returning to work due to "total disability." This medical evidence demonstrates that Plaintiff had more than a *de minis* claim because both doctors found that Plaintiff would not be able to perform his usual work functions. Significantly, the ALJ failed to consider the entire record as he did not consider Dr. Butani's report. Therefore, at the very least, the ALJ should have found that Plaintiff satisfied the requirements of step two

and moved on to evaluate Plaintiff under the remainder of the five-step inquiry. On remand, the ALJ is directed to continue evaluating Plaintiff under the five-step inquiry beginning with step three.

## B. The ALJ Did Not Apply the Treating Physician Rule

A treating source's medical opinion on the nature and severity of an impairment is given controlling weight when it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) (citing 20 C.F.R. § 404.1527(d)). Social Security regulations define "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source who provides a claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant." *Brickhouse v. Astrue*, 331 F. App'x 875, 877 (2d Cir. 2009) (citing 20 C.F.R. § 404.1502).

If an ALJ determines that a treating physician's opinion is not controlling, he or she is still required under Social Security regulations to consider the following six factors in determining the proper weight to be accorded to the treating physician's opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the relationship; (3) the evidence provided to support the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the Commissioner's attention that tend to support or contradict the opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)). *See also Pimenta v. Barnhart*, 2006 WL 2356145, at *4 (S.D.N.Y. Aug. 14, 2006). Additionally, the ALJ always must give "good reasons" in his or her decision for the weight accorded to a treating physician's medical opinion. *Id.* "Failure to provide 'good

reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citing *Schaal*, 134 F.3d at 505).

However, certain ultimate conclusions are not made by the treating physicians, but are made by the ALJ instead. Such decisions include the determination that a claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). "[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell*, 177 F.3d at 133.

The ALJ accorded Dr. Toriello and Dr. Goldman controlling weight and disregarded Dr. Weissman and Dr. Butani's opinions. (Tr. 16-18.) The ALJ's stated reason was that the only medical evidence he received from Dr. Weissman dated from March 2011. (Tr. 17.) However, the ALJ relied on Dr. Toriello's evaluation, which also occurred in March 2011, in making his determination. (Tr. 18.) Dr. Goldman never evaluated Plaintiff in person, but responded to a set of interrogatories sent to him from the Social Security Administration, after reviewing Plaintiff's medical history. (Tr. 505-10.) Dr. Goldman provided this evaluation on June 10, 2012. Therefore, the ALJ's proffered reason that he should not rely on Dr. Weissman's evidence because it was created in March 2011 is unpersuasive.

Furthermore, even assuming that the opinions of Dr. Toriello and Dr. Goldman constituted substantial evidence, the ALJ failed to comply with his duty to consider the six factors set forth in 20 C.F.R. § 404.1527(d) before completely rejecting the opinion of Dr. Weissman, a treating physician. Dr. Weissman examined Plaintiff on several occasions during the treating period. As the treating physician who examined Plaintiff most frequently throughout the course of his injury, Dr. Weissman is best suited to provide a "detailed, longitudinal picture"

of Plaintiff's impairments. 20 C.F.R. § 404-1527(d)(2)(ii); *see Pimenta*, 2006 WL 2356145, at *5. Dr. Butani, whom Plaintiff saw almost a year before going to Dr, Weissman, also corroborated Dr. Weissman's opinion. The ALJ did not consider Dr. Butani's opinion at all in making his decision. Thus, the ALJ erred in disregarding Dr. Weissman's longitudinal history with plaintiff, and Dr. Butani's corroboration of his findings, in favor of the opinions of two medical examiners, one who saw Plaintiff once and one who never evaluated him in person.

Accordingly, this case must be remanded for a disability determination due to the ALJ's failure to apply properly the treating physician rule.

**C.    The ALJ Failed to Developed the Record Properly**

Plaintiff alleges that the ALJ failed to develop the medical record properly when he did not contact Dr. Weissman for copies of the MRI and x-rays of Plaintiff's knee that were referenced in Dr. Weissman's medical records. (Pl.'s Mot. at 16-17.) The Court agrees. As part of the ALJ's fundamental duty to develop the record, he is responsible for seeking additional information when the treating physician has not provided an adequate basis to determine a claimant's disability. *See* 20 C.F.R. § 404.1512(d)-(e) (describing responsibility to develop the record); *Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000) ("For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record, regardless of whether the claimant is represented by legal counsel."). In describing this duty, the Second Circuit has explained that a treating physician's failure to provide a full explanation or clinical findings supporting his or her determination that a plaintiff is disabled, "does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the

disposition of the case." *Clark.,* 143 F.3d at 118; *Schaal,* 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [Plaintiff's treating physician] *sua sponte.*").

The ALJ claims that he attempted to complete the evidentiary record by contacting Dr. Weissman's office on April 28, 2011. (Tr. 18.) However, the ALJ's statement is not supported by any evidence in the administrative record. Furthermore, as Dr. Weissman was Plaintiff's treating physician, the ALJ should have made additional attempts to complete Dr. Weissman's medical record. This is especially significant where, as here, the ALJ found that Dr. Weissman's opinion was not corroborated by any objective medical evidence. (Tr. 18.) The ALJ also failed to consider the opinion of Dr. Butani in his determination, which also is cause for remand as Dr. Butani's opinion corroborated Dr. Weissman's findings. Therefore, the case must be remanded for a disability determination due to the ALJ's failure to develop and consider the entire medical record.

### D. The ALJ Did Not Err in Concluding that Plaintiff's PTSD Diagnosis Was Not a Severe Impairment

Plaintiff contends that the ALJ erred at step two by ruling that Plaintiff's PTSD diagnosis and associated depression and anxiety was not a severe impairment. To evaluate the severity of Plaintiff's mental impairment, an ALJ must look to the criteria for a mental disorder under Listing 12.00C. In particular, he should review the record for any evidence of impairment of the four functional areas assessed in Listing 12.00C: daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Although the ALJ incorrectly described Plaintiff's PTSD diagnosis as "mildly" depressed and anxious when the doctor diagnosed him as "moderately" depressed and anxious, the error

16

was harmless. Plaintiff neither alleged that he suffered from any impairment of the functional areas, nor did he follow-up on obtaining any additional diagnosis or treatment. Accordingly, the ALJ correctly concluded that Plaintiff does not suffer from a severe mental impairment and the ALJ's finding as to the severity of Plaintiff's PTSD is affirmed.

### E. The ALJ Failed to Evaluate Plaintiff's Credibility Properly

The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *Taylor v. Barnhart,* 83 F. App'x 347, 350 (2d Cir. 2010). However, the ALJ is afforded the discretion to assess the credibility of a claimant and is not "required to credit [plaintiff's] testimony about the severity of [his] pain and the functional limitations it caused." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x. 20, 22 (2d Cir. 2008)). In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); S.S.R. 96-7p. Second, if the ALJ finds that the individual suffers from a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c)(1); S.S.R. 96-7p.

Where the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any

17

medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Correale-Englehart,* 687 F. Supp. 2d at 435. Where the ALJ neglects to discuss at length her credibility determination to the extent the reviewing court cannot decide whether there are legitimate reasons for the ALJ's disbelief and whether her decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36; *see also Grosse v. Comm'r of Soc. Sec.*, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding that the ALJ committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding because the ALJ failed to address all seven factors).

The ALJ found that Plaintiff's testimony was not supported by the objective medical evidence, including Plaintiff's complaints of knee pain, left shoulder pain, PTSD symptoms, and inability to perform basic work activities. (Tr. 17-19.) However, in making the determination that Plaintiff's complaints were not supported by the objective medical evidence, the ALF failed to evaluate the Plaintiff's testimony in light of the seven factors. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Additionally, the ALJ relied on Dr. Toriello's testimony to discredit Plaintiff, without discussing at length his reasons for not believing Plaintiff. As discussed above, Dr. Toriello saw Plaintiff only once for an evaluation, which is not enough to discredit the entirety of Plaintiff's testimony. The ALJ both must give legitimate reasons for his disbelief and

18

evaluate Plaintiff's testimony in light of the seven factors. Therefore, the case must be remanded for the ALJ to reassess Plaintiff's testimony under the appropriate legal standards.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is granted. Accordingly, the decision of the Commissioner is reversed and this matter is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

DATED:	Brooklyn, New York
	August 3, 2015

/s/
DORA L. IRIZARRY
United States District Judge